IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROJECT FOR PRIVACY AND SURVEILLANCE ACCOUNTABILITY, INC.<br>1101 Connecticut Ave. NW, Ste. 450<br>Washington, DC 20036<br><br>      Plaintiff,<br>  v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE ,<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br>Washington, DC 20511,<br><br>NATIONAL SECURITY AGENCY,<br>9800 Savage Road<br>Fort Meade, MD 20755,<br><br>CENTRAL INTELLIGENCE AGENCY,<br>Washington, D.C. 20505,<br><br>UNITED STATES DEPARTMENT OF STATE,<br>2201 C St NW<br>Washington, DC 20520,<br><br>      Defendants | **COMPLAINT**<br><br>1:20-cv-3657 |

## Introduction

1. This Freedom of Information Act (FOIA) suit seeks records from Defendants the United States Department of Justice, the Office of the Director of National Intelligence, the National Security Agency, the Central Intelligence Agency,

and the United States Department of State. *See* 5 U.S.C. § 552. These records and the information they contain are necessary to answer a question of national significance: Whether government agencies abused foreign intelligence surveillance powers against American citizens charged with oversight of those same agencies.

2. To answer this pressing question more fully, the Project for Privacy and Surveillance Accountability, Inc. ("PPSA"), the Plaintiff in this action, requested records under FOIA as early as January 27, 2020. But it has not received a substantive response from any of the six agencies as required by law. PPSA brings suit to compel that response.

## Jurisdiction and Venue

3. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. It may grant declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*, and award costs and attorneys' fees pursuant to 28 U.S.C. § 2412 and 5 U.S.C. § 552(a)(4)(E).

4. Venue lies in this District under 5 U.S.C. § 552(a)(4)(B).

## Parties

5. Plaintiff PPSA is a Delaware non-profit corporation with its principal place of business in Washington, DC. As part of its mission, PPSA advocates for greater privacy and civil liberty protections from government surveillance, and seeks to hold such programs accountable to constitutional and statutory limitations.

6. Defendant the Department of Justice is a Department of the Executive Branch of the United States Government. The Department has possession, custody, and control of records to which Plaintiff seeks access. Additionally, the Federal Bureau of Investigation (FBI) is an agency within Defendant the Department of Justice. The FBI has possession, custody, and control of records to which Plaintiff seeks access.

7. Defendant Office of the Director of National Intelligence (DNI Office) is, as its name suggests, the office of the Director of National Intelligence. The Director is a cabinet-level position within the Executive Branch. The Office has possession, custody, and control of records to which Plaintiff seeks access.

8. Defendant National Security Agency (NSA) is an agency within the Department of Defense within the Executive Branch. The NSA has possession, custody, and control of records to which Plaintiff seeks access.

9. Defendant Central Intelligence Agency (CIA) is an agency of the Executive Branch. The CIA has possession, custody, and control of records to which Plaintiff seeks access.

10. Defendant the Department of State is a Department of the Executive Branch. The Department has possession, custody, and control of records to which Plaintiff seeks access.

## Facts

11. FOIA requires federal agencies, including Defendants, to "promptly" release agency records upon request to any member of the public. 5 U.S.C. § 552 (a)(3); *see also* 5 U.S.C. § 552(f)(1) (definition of agency). If the records fall under a statutory

exemption or are excluded from FOIA, the agency may deny the request. *See* 5 U.S.C. § 552(b)(1)-(9) (exemptions); *id.* § 552(c)(1)-(3) (exclusions).

12. Plaintiff's requests in this case concern the Defendants' use of the Foreign Intelligence Surveillance Act of 1978 (FISA).[1] Section 702 of FISA ("Section 702") empowers the Attorney General and the Director of National Intelligence to jointly authorize "the targeting of persons reasonably believed to be located *outside* the United States to acquire foreign intelligence information." 50 U.S.C. § 1881a(a) (emphasis added). Section 702 expressly forbids use of this surveillance process to target persons who are either "United States persons" or located "inside the United States." *Id.* at 1881a(b).

13. The principal agencies that collect and use Section 702 surveillance information are the FBI, the NSA, and the CIA. Those three agencies have distinct areas of responsibility.

14. The FBI collects data on outgoing communications (*i.e.*, from persons in the United States to persons outside the United States).

15. The NSA collects data on incoming communications (*i.e.*, from persons outside the United States to persons inside the United States).

16. The CIA, like the FBI and NSA, analyzes the information that comes from the FBI's and NSA's data collection. Unlike the other agencies, the CIA uses the information to engage in international intelligence operations.

---

[1] P.L. 95-511, 92 Stat. 1783 as amended by the FISA Amendments Act of 2008, P.L. 110-261, 122 Stat. 2436.

17. The Departments of Justice and State receive reports from the FBI, NSA, and CIA, based on those agencies' data and analysis.

18. Section 702 also requires that foreign intelligence surveillance be conducted consistently with "minimization procedures." *Id.* § 1881a(e)(1). These procedures are designed to "minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons," but in a manner still "consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information." *Id.* § 1801(h)(1). As relevant here, minimization procedures must be designed to ensure the anonymity of United States persons who may be incidentally surveilled. *Id.* § 1801(h)(1), (2).

19. Generally, original raw intelligence is not circulated to other agencies; instead, intelligence reports are created and circulated internally. *See, e.g.*, Gregory Korte, *What is 'unmasking?' How intelligence agencies treat U.S. citizens*, USA Today, (Apr. 4, 2017; 2:14 p.m.), https://www.usatoday.com/story/news/politics/2017/04/04/what-unmasking-how-intelligence-agencies-treat-us-citizens/100026368/. In the process of summarizing the intelligence, agencies exclude the names of U.S. citizens from the reports, referring to them instead with identifiers like "U.S. Person 1." *Id.*

20. Approximately twenty individuals within the NSA—and others in the FBI and CIA—have authority to "unmask" the concealed identities, making an individual's previously masked name available in intelligence summaries. *See Id.* In

that circumstance, anyone authorized to see the summaries will know the names of the United States persons involved. While the unmasking itself is done only by members of the agencies who handle raw intelligence, many of the individuals who have access to intelligence summaries have the authority to request unmasking if they deem the masked information important to understanding the intelligence. *Id.*

21. The NSA also has the ability to search the internet data it collects by entering the name of an individual into a database search tool. This process is known as "upstreaming" and has the effect of creating additional raw intelligence that may contain the names of American persons. Such intelligence is also subject to the usual masking requirements and procedures.

22. In 2017, anonymous intelligence community sources confirmed that U.S. lawmakers' names may frequently appear in executive branch intelligence reports, but that lawmakers often don't learn about such unmaskings unless they involve a hacking or security threat. *See*, *e.g.*, Mark Hensch, *US spy agencies routinely unmask lawmakers: report*, The Hill, (Apr. 6, 2017; 7:54 a.m.), https://thehill.com/policy/national-security/intelligence/327538-spy-agencies-routinely-unmask-lawmakers-report/.

23. The alleged frequency of such undisclosed surveillance indicates that unmaskings may have been requested for illegitimate reasons—for example, to gain information to embarrass or compromise members of congressional committees responsible for overseeing the intelligence community. Whatever the reasons,

unmasking a U.S. citizen absent a national security justification violates internal regulations, federal law, and the Fourth Amendment.

24. News reports—as well as a declassified Foreign Intelligence Surveillance Court (FISC) opinion—also note that some Americans had their names upstreamed, in violation of internal policies, during the 2016 election cycle, which the opinion described as a "serious Fourth Amendment issue." *See* Declassified FISC Court opinion at 19-20, available at http://bit.ly/FISCopApril2017; *see also, e.g.*, Andrew McCarthy, *Explosive Revalation of Obama Administration Illegal Surveillance of Americans*, May 25, 2017), https://www.nationalreview.com/2017/05/nsa-illegal-surveillance-americans-obama-administration-abuse-fisa-court-response/.

25. The intelligence agencies have adopted procedures to self-regulate their activities. On information and belief, at least two departments within the NSA handle complaints regarding the improper use of intelligence. These departments are known publicly by the codes "S12," a code name apparently referring to the agency's Information Sharing Services authority, and "SV," a code name apparently referring to the agency's Oversight and Compliance authority.

**Plaintiff's efforts to obtain records via FOIA**

26. Plaintiff has attempted to obtain records from each of the Defendants—and the Federal Bureau of Investigation, a part of Defendant Department of Justice—via FOIA. As described more fully below, plaintiff sought records from all Defendants on the unmasking and upstreaming—including requests for unmasking or

upstreaming—of the following current and former members of congressional intelligence committees:

a. Rep. Adam Schiff
b. Rep. Jim Himes
c. Rep. Terri Sewell
d. Rep. Andre Carson
e. Rep. Jackie Speier
f. Rep. Mike Quigley
g. Rep. Eric Swalwell
h. Rep. Joaquin Castro
i. Rep. Denny Heck
j. Rep. Peter Welch
k. Rep. Sean Patrick Maloney
l. Rep. Val Demings
m. Rep. Raj Krishnamoorthi
n. Rep. Devin Nunes
o. Rep. Mike Conaway
p. Rep. Michael Turner
q. Rep. Brad Wenstrup
r. Rep. Chris Stewart
s. Rep. Rick Crawford
t. Rep. Elise Stefanik
u. Rep. Will Hurd
v. Rep. John Ratcliffe
w. Sen. James Risch
x. Sen. Marco Rubio
y. Sen. Susan Collins
z. Sen. Roy Blunt
aa. Sen. Tom Cotton
bb. Sen. John Cornyn
cc. Sen. Ben Sasse
dd. Sen. Dianne Feinstein
ee. Sen. Ron Wyden
ff. Sen. Martin Heinrich
gg. Sen. Angus King
hh. Sen. Kamala Harris
ii. Sen. Michael Bennet
jj. Sen. James Lankford
kk. Sen. Mark Warner
ll. Rep. Peter King
mm. Former Rep. Frank LoBiondo
nn. Former Rep. Trey Gowdy

      oo.    Former Rep. Tom Rooney
      pp.    Former Rep. Ileana Ros-Lehtinen
      qq.    Former Rep. Jeff Miller
      rr.    Former Rep. Lynn Westmoreland
      ss.    Former Rep. Joe Heck
      tt.    Former Rep. Mike Pompeo
      uu.    Former Rep. Luis Gutierrez
      vv.    Former Rep. Patrick Murphy

### U.S. Department of Justice

27. On January 27, 2020, Plaintiff sent a letter, attached to this complaint as Exhibit A, to Defendant Department of Justice's FOIA office. The letter requested any information Defendant may have regarding the unmasking or upstreaming of members of congressional intelligence committees. Accordingly, the letter requested:

> **1. All documents, reports, memoranda, or communications regarding the unmasking—including all unmasking requests—of any person listed below from January 1, 2008 to January 15, 2020:**
>
> **<list of names in Paragraph 26, *supra*>**
>
> **2. All documents, reports, memoranda, or communications regarding the upstreaming—including all requests for upstreaming—of any individual listed in Question 1 above, from Jan. 1, 2008 to Jan. 15, 2020.**

28. By letter dated January 29, 2020 (Exhibit B), the Department advised Plaintiff that his FOIA request had been received and forwarded to the NSD.

29. By letter dated February 18, 2020, the NSD advised Plaintiff that its FOIA request (now assigned Number 20-193) had been denied, issuing a so-called Glomar response under FOIA Exemption 1. (Exhibit C).

30. Plaintiff timely appealed its request on May 18, 2020. (Exhibit D). By letter dated September 21, 2020, the DOJ acknowledged receipt of that appeal on September 11, 2020. (Exhibit E). Thus, under 5 U.S.C. § 552(a)(6)(A) and 5 U.S.C. §

552(a)(6)(C), which require the DOJ to respond to an appeal within twenty business days, Plaintiff has exhausted the applicable administrative remedies.

31. As of the date of this complaint, the DOJ has failed to produce the requested records or demonstrate, on appeal, that the requested records are lawfully exempt from production.

32. Plaintiff has a right of prompt access to the requested records under 5 U.S.C. § 552(a)(3)(A), but the DOJ has wrongfully withheld them.

**Office of Director of National Intelligence**

33. On January 28, 2020, Plaintiff sent a letter, attached to this complaint as Exhibit F, to the FOIA office of the DNI Office. The letter requested any information Defendant may have regarding the unmasking or upstreaming of members of congressional intelligence committees. Accordingly, the letter requested:

**1. All documents, reports, memoranda, or communications regarding the unmasking—including all unmasking requests—of any person listed below from January 1, 2008 to January 15, 2020:**

**<list of names in Paragraph 26, *supra*>**

**2. All documents, reports, memoranda, or communications regarding the upstreaming—including all requests for upstreaming—of any individual listed in Question 1 above, from Jan. 1, 2008 to Jan. 15, 2020.**

34. By letter dated February 4, 2020, the Office advised Plaintiff that its FOIA request (assigned tracking number DF-2020-000109) had been denied, issuing a so-called Glomar response under FOIA Exemptions 1 and 3. (Exhibit G).

35. Plaintiff timely appealed his request on May 4, 2020 (Exhibit H) and filed a supplemental letter on July 18, 2020 (Exhibit I). The supplemental letter attached a May 25, 2020 letter from then-Acting Director of National Intelligence

Richard Grenell regarding his declassification of documents related to the unmasking of Michael Flynn (the "Grenell Letter"; Exhibit J), and discussed the Grenell Letter's significance to PPSA's own request for information about unmasking. By letter dated July 29, 2020 (Exhibit K)—more than twenty business days after receipt of PPSA's appeal—the Office denied the appeal. Thus, under 5 U.S.C. § 552(a)(6)(A) and 5 U.S.C. § 552(a)(6)(C), Plaintiff has exhausted the applicable administrative remedies. *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 59 (D.C. Cir. 1987) (agency's failure to respond to administrative appeal within statutory deadline resulted in constructive exhaustion at that time, despite subsequent disposition of that appeal).

36. As of the date of this complaint, the Office has failed to produce the requested records or demonstrate, on appeal, that the requested records are lawfully exempt from production.

37. Plaintiff has a right of prompt access to the requested records under 5 U.S.C. § 552(a)(3)(A), but the Office has wrongfully withheld them.

### National Security Agency

38. On January 28, 2020, Plaintiff sent a letter, attached to this complaint as Exhibit L, to Defendant NSA's FOIA office. The letter requested any information Defendant may have regarding the unmasking or upstreaming of members of congressional intelligence committees. Accordingly, the letter requested:

> **1. All documents, reports, memoranda, or communications regarding the unmasking—including all unmasking requests—of any person listed below from January 1, 2008 to January 15, 2020:**
>
> <list of names in Paragraph 26, *supra*>

11

**2. All documents, reports, memoranda, or communications regarding the upstreaming—including all requests for upstreaming—of any individual listed in Question 1 above, from Jan. 1, 2008 to Jan. 15, 2020.**

39. By letter dated February 12, 2020, the Office advised Plaintiff that its FOIA request (assigned tracking number 108990) had been denied, issuing a so-called Glomar response under FOIA Exemptions 1 and 3. (Exhibit M).

40. On August 20, 2020, after public dissemination of the Grenell Letter, PPSA sent a letter to Defendant NSA's FOIA office (Exhibit N), again requesting the unmasking and upstreaming materials described in Paragraph 38. By letter dated September 1, 2020, the Office advised Plaintiff that its new FOIA request (assigned tracking number 110225) would not be processed because of the agency's prior response to request number 108990. Exhibit O.

41. Plaintiff timely appealed request number 110225 on October 9, 2020. (Exhibit P). By email dated October 16, 2020, the NSA acknowledged receipt of that appeal on October 9, 2020. (Exhibit Q). Thus, under 5 U.S.C. § 552(a)(6)(A) and 5 U.S.C. § 552(a)(6)(C), which require the NSA to respond to an appeal within twenty business days, Plaintiff has exhausted the applicable administrative remedies.

42. As of the date of this complaint, the NSA has failed to produce the requested records or demonstrate, on appeal, that the requested records are lawfully exempt from production.

43. Plaintiff has a right of prompt access to the requested records under 5 U.S.C. § 552(a)(3)(A), but the NSA has wrongfully withheld them.

**Federal Bureau of Investigation**

44. On January 27, 2020, Plaintiff sent a letter (Exhibit R) to the FBI's FOIA office. The letter requested any information Defendant may have regarding the unmasking or upstreaming of members of congressional intelligence committees. Accordingly, the letter requested:

> **1. All documents, reports, memoranda, or communications regarding the unmasking—including all unmasking requests—of any person listed below from January 1, 2008 to January 15, 2020:**
>
> **<list of names in Paragraph 26, *supra*>**
>
> **2. All documents, reports, memoranda, or communications regarding the upstreaming—including all requests for upstreaming—of any individual listed in Question 1 above, from Jan. 1, 2008 to Jan. 15, 2020.**

45. By letter dated February 10, 2020 (Exhibit S), the FBI advised Plaintiff that his FOIA request had been received and assigned Number 1459381-000.

46. By letter dated June 22, 2020, the FBI advised Plaintiff that its FOIA request had been denied, issuing a so-called Glomar response under FOIA Exemptions 1, 3, 6, 7(C) and 7(E). (Exhibit T).

47. Plaintiff timely appealed its request on September 8, 2020. (Exhibit U). By letter dated September 22, 2020, the FBI acknowledged receipt of that appeal on September 11, 2020. (Exhibit V). Thus, under 5 U.S.C. § 552(a)(6)(A) and 5 U.S.C. § 552(a)(6)(C), which require the FBI to respond to an appeal within twenty business days, Plaintiff has exhausted the applicable administrative remedies.

48. As of the date of this complaint, the FBI has failed to produce the requested records or demonstrate, on appeal, that the requested records are lawfully exempt from production.

49. Plaintiff has a right of prompt access to the requested records under 5 U.S.C. § 552 (a)(3)(A), but the FBI has wrongfully withheld them.

**Central Intelligence Agency**

50. On January 28, 2020, Plaintiff sent a letter (Exhibit W) to Defendant CIA's FOIA office. The letter requested any information Defendant may have regarding the unmasking or upstreaming of members of congressional intelligence committees. Accordingly, the letter requested:

> **1. All documents, reports, memoranda, or communications regarding the unmasking—including all unmasking requests—of any person listed below from January 1, 2008 to January 15, 2020:**
>
> **<list of names in Paragraph 26, *supra*>**
>
> **2. All documents, reports, memoranda, or communications regarding the upstreaming—including all requests for upstreaming—of any individual listed in Question 1 above, from Jan. 1, 2008 to Jan. 15, 2020.**

51. By letter dated January 31, 2020 (Exhibit X), the CIA advised Plaintiff that his FOIA request had been received on January 29, 2020 and assigned Number F-2020-00795.

52. As of the date of this complaint, the CIA has failed to: (i) produce the requested records or demonstrate that the requested records are lawfully exempt from production; (ii) notify Plaintiff of the scope of any responsive records the CIA

14

intends to produce or withhold and the reasons for any withholdings; or (iii) inform Plaintiff that he may appeal any adequately specific adverse determinations.

53. Although more than thirty business days have passed since the CIA received Plaintiff's FOIA request, the CIA has not notified Plaintiff as to whether it will fully comply with that request. Thus, under 5 U.S.C. § 552 (a)(6)(A) and 5 U.S.C. § 552 (a)(6)(C), Plaintiff has exhausted the applicable administrative remedies.

54. Plaintiff has a right of prompt access to the requested records under 5 U.S.C. § 552 (a)(3)(A), but the CIA has wrongfully withheld them.

### U.S. Department of State

55. On January 28, 2020, Plaintiff sent a letter (Exhibit Y) to Defendant Department of State's FOIA office. The letter requested any information Defendant may have regarding the unmasking or upstreaming of members of congressional intelligence committees. Accordingly, the letter requested:

> **1. All documents, reports, memoranda, or communications regarding the unmasking—including all unmasking requests—of any person listed below from January 1, 2008 to January 15, 2020:**
>
> **<list of names in Paragraph 26, *supra*>**
>
> **2. All documents, reports, memoranda, or communications regarding the upstreaming—including all requests for upstreaming—of any individual listed in Question 1 above, from Jan. 1, 2008 to Jan. 15, 2020.**

56. By letter dated February 6, 2020 (Exhibit Z), the Department advised Plaintiff that his FOIA request had been received on January 29, 2020 and assigned Number F-2020-03458.

15

57. As of the date of this complaint, the Department has failed to: (i) produce the requested records or demonstrate that the requested records are lawfully exempt from production; (ii) notify Plaintiff of the scope of any responsive records the Department intends to produce or withhold and the reasons for any withholdings; or (iii) inform Plaintiff that he may appeal any adequately specific adverse determinations.

58. Although more than thirty business days have passed since the Department received Plaintiff's FOIA request, the Department has not notified Plaintiff as to whether it will fully comply with that request. Thus, under 5 U.S.C. § 552 (a)(6)(A) and 5 U.S.C. § 552 (a)(6)(C), Plaintiff has exhausted the applicable administrative remedies.

59. Plaintiff has a right of prompt access to the requested records under 5 U.S.C. § 552 (a)(3)(A), but the State Department has wrongfully withheld them.

## Count One: Freedom of Information Act

### Defendants are required to disclose all non-exempt records responsive to Plaintiff's Freedom of Information Act requests

60. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint.

61. FOIA's administrative exhaustion requirement required Defendants to determine whether to comply with Plaintiff's requests within the time limits set by FOIA—namely, within twenty business days or, in "unusual circumstances," within thirty business days. 5 U.S.C. § 552(a)(6)(A)–(B). Accordingly, the CIA's and State Department's determinations were due, at the latest, on March 12, 2020.

62. At a minimum, Defendants were obligated to: (i) gather and review the requested records; (ii) determine and communicate to Plaintiff the scope of any responsive records Defendants intended to produce or withhold and the reasons for any withholdings; and (iii) inform Plaintiff that it may appeal any adequately specific adverse determinations. See, e.g., *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 188-89 (D.C. Cir. 2013).

63. With respect to the Plaintiffs' FOIA requests noted above, Defendants did not perform any of the required activities by the applicable statutory deadlines.

64. With respect to the four appeals, the DOJ, FBI, NSA, and ODNI all failed to evaluate Plaintiff's appeals within twenty business days. Although the ODNI ultimately denied Plaintiff's appeal on July 29, 2020, its response was due on approximately June 2, resulting in the constructive exhaustion of Plaintiff's administrative remedies at that time. *See Spannaus*, 824 F.2d at 59 (failure to

17

respond to administrative appeal within statutory deadline resulted in constructive exhaustion at that time). Likewise, responses to the three outstanding appeals were due prior to the filing of this suit—the DOJ's and FBI's on approximately October 9, and the NSA's on approximately November 9. 5 USC 552(a)(6)(A)(ii), (C)(i).

65. Consequently, Plaintiff is deemed to have exhausted his administrative appeal remedies. 5 U.S.C. § 552(a)(6)(A), (C)(i), (ii).

66. Defendants' failure to release responsive non-exempt records violates FOIA, 5 U.S.C. § 522(a)(3)(A), as well as the regulations implementing FOIA.

67. Plaintiff is entitled to receive all responsive non-exempt records from Defendants forthwith.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court:

A. Order Defendants to conduct searches immediately for any and all records responsive to Plaintiff's FOIA requests and demonstrate that they employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request.

B. Order Defendants to produce, by dates certain, any and all non-exempt records to Plaintiff's FOIA requests, and *Vaughn* indices of any responsive records withheld under claim of exemption;

C. Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA requests;

D. Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Grant Plaintiff such other relief as the Court deems just and proper.

                Respectfully submitted,

                GENE C. SCHAERR (D.C. Bar No. 416638)
                  *Counsel of Record*
                SCHAERR | JAFFE LLP
                1717 K Street NW, Suite 900
                Washington, DC 20006
                (202) 787-1060
                gschaerr@schaerr-jaffe.com
                *Counsel for Plaintiff PPSA, Inc.*